UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROTESHIA T. THOMAS,                          Case No. 11-15450

        Plaintiff,                           Thomas L. Ludington
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge
        Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On December 13, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 11, 14).

### B.    Administrative Proceedings

Plaintiff filed the instant claims on December 30, 2008, alleging that her

disability began on July 1, 2007.  (Dkt. 7-2, Pg ID 34).  The claim was initially

disapproved by the Commissioner on April 14, 2009.  (Dkt. 7-2, Pg ID 34).

Plaintiff requested a hearing, which was held on December 8, 2010.  (Dkt. 7-2, Pg

ID 34).  In a decision dated March 11, 2011, ALJ Troy M. Patterson found that

plaintiff was not disabled.  (Dkt. 7-2, Pg ID 34-45).  Plaintiff requested a review of

this decision on April 25, 2011.  (Dkt. 7-2, Pg ID 30).  The ALJ's decision became

the final decision of the Commissioner when, after the review of additional

exhibits, [1] the Appeals Council, on November 9, 2011, denied plaintiff's request

for review.  (Dkt. 7-2, Pg ID 24-26); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

543-44 (6th Cir. 2004).

      For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 29 years of age at the time of the alleged onset date and 33 years old at the time of the most recent administrative hearing.  (Dkt. 7-2, Pg ID 43).  Plaintiff had past relevant work history as a production worker and stocker.  (Dkt. 7-2, Pg ID 43).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2007.  (Dkt. 7-2, Pg ID 36).  At step two, the ALJ found that plaintiff's depression and bipolar disorder were "severe" impairments within the meaning of the second sequential step.  (Dkt. 7-2, Pg ID 36).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID 37).  At step four, the ALJ found that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she would need to be restricted to jobs involving only superficial interpersonal contact with coworkers and the public, and she is limited to simple, routine, and repetitive tasks.  (Dkt. 7-2, Pg ID 38).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform her past work and, in the alternative, there are other jobs that exist in significant numbers in the national economy that she could perform.  (Dkt. 7-2, Pg ID 43).

B.    Plaintiff's Claims of Error

In the present case, the ALJ limited plaintiff to, "jobs involving only superficial interpersonal contact with coworkers and the public, and she is limited to simple, routine, and repetitive tasks." (Tr. 15). According to plaintiff, this does not accurately portray her limitations, specifically with regard to her "moderate" limitations in concentration, persistence or pace. In assessing plaintiff's RFC, the ALJ evaluated opinion evidence from Dr. Nathalie Menendes, who examined the plaintiff on March 16, 2009. (Tr. 19). Dr. Menendes opined that the plaintiff "is able to understand, retain, and follow simple and one step instructions. She is able to perform and remember simple, routine, and repetitive tangible tasks...she may have difficulty with performing complex or multi-step tasks, making independent work related decisions, or engaging in abstract thinking and work that is not routine. Further, she does not handle frustrating situations well and should not be expected to be able to cope with stress or difficult situation in a work setting ... she would not be able to deal well with conflict." (Tr. 249). The ALJ concluded that "the evidence supports the majority of this opinion." (Tr. 19). However, the ALJ only gave Dr. Menendes' opinion "some weight," because the ALJ did not believe the evidence of record supported a finding "that the claimant is not able to handle stressful or difficult situations in a work setting." (Tr. 19). Although the ALJ limited plaintiff's RFC to work that involves only superficial contact with

coworkers and the public, as well as to simple, routine, and repetitive tasks, according to plaintiff, these limitations only scratch the surface of the limitations opined by Dr. Menendes and found to be consistent with the evidence of record by the ALJ.

Specifically, Dr. Menendes determined that plaintiff was limited to understanding, retaining, and following only simple, one step instructions. (Tr. 249). The ALJ found this portion of Dr. Menendes' expert opinion to be supported by the evidence of record, but plaintiff contends that the hypothetical questioning and RFC determination are devoid of a limitation that would adequately portray a claimant with this limitation. Additionally, Dr. Menendes determined that the plaintiff may have difficulty with performing multi-step tasks. (Tr. 249). Again, the ALJ found this portion of the expert's opinion to be supported by the evidence of record, but plaintiff asserts that the ALJ did not include such a limitation in the hypothetical questioning or RFC determination. Dr. Menendes also determined that plaintiff may have difficulty making independent work-related decisions, and although the ALJ also found this limitation consistent with the evidence of record, plaintiff argues that the ALJ did not adequately portray this limitation in posing hypothetical questions or forming the RFC. (Tr. 249). Therefore, according to plaintiff, based on the evidence of record and expert opinion of Dr. Menendes, plaintiff suffered from numerous additional limitations, which the ALJ found to be

supported by the evidence of record, which were not adequately portrayed to the vocational expert in the hypothetical questions and were not accounted for in the RFC determination. Although the ALJ also gave "weight" to the opinion of a non-examining state disability examiner, "as it is mostly consistent with the evidence as a whole," plaintiff says it is unclear which portions of the examiner's opinion the ALJ gave "weight" to, or what actual "weight" was given to such statements. Alternatively, plaintiff suggests that it is very clear based on the ALJ's decision what portions of Dr. Menendes' opinion the ALJ gave weight to and that he found to be consistent with the evidence of record.

According to plaintiff, it is unclear whether the ALJ actually believed that he had accounted for the limitations provided by Dr. Menendes or whether he disregarded the limitations for other reasons, as the ALJ provided no explanation for the omission of the significant limitations from the hypothetical questioning and RFC determination. The ALJ relied on the vocational expert's testimony in finding, at step four that the plaintiff retained the ability to perform past relevant work as it is generally performed in the national economy, and alternatively at step five, that the plaintiff retained the ability to perform other work in that national economy. (Tr. 41). Plaintiff contends that, as the hypothetical questioning was flawed because it did not adequately account for plaintiff's limitations, the vocational expert's testimony cannot serve as substantial evidence in reliance on

the flawed hypothetical questioning.  As such, plaintiff asks the Court to remand

this matter pursuant to sentence four because the final decision of the

Commissioner is not supported by substantial evidence.

Plaintiff also argues that the ALJ did not meet his heightened burden to fully

and fairly develop the record of an unrepresented Social Security claimant.

Although the Plaintiff informed the ALJ that she was supposed to be represented

by "Lee Church," but that he was not currently present, the ALJ informed the

plaintiff that her hearing would have to be held without representation: "We've

already given you the opportunity to get one and it's been four months so we need

to move on."  (Tr. 31).  According to plaintiff, her statement "but if we have to

gone on, I'll just go on," was a forced waiver of her right to representation.

Plaintiff contends that this alone constitutes reversible error, as the ALJ should

have at a minimum further inquired about the representative that plaintiff believed

would appear on her behalf and made clear that the plaintiff was in fact waiving

her right to representation.  Further, plaintiff says that she obviously had no

understanding of hearing procedures, as she thought the representative "was asking

for a jury."  (Tr. 31).

Plaintiff says that the ALJ made no attempt to elicit testimony from the

plaintiff regarding her manic symptoms from bipolar disorder, nor was the plaintiff

aware of what her manic symptoms might be based on the limited explanation

given by the ALJ.  In his decision, the ALJ limited his analysis of the plaintiff's bipolar disorder to the limited hearing testimony:  "She also testified that her bipolar disorder causes her to go for days without sleep and to isolate herself in her room."  The ALJ did not, however, discuss or attempt to elicit testimony from the plaintiff regarding her anger, irritability, frustration, and mood swings documented throughout the medical evidence of record as symptoms of her bipolar disorder. (Tr. 278-287).

Plaintiff also contends that the ALJ erred by not providing plaintiff any opportunity to cross-examine the vocational expert.  The ALJ actually asked plaintiff to be patient while he asked the expert questions.  (Tr. 42-43).  At no point in time was plaintiff provided an opportunity to ask questions from the vocational expert, as a representative would on behalf of their claimant.  Perhaps this error would be harmless, had the ALJ adequately elicited testimony from the expert. However, in response to the hypothetical question that was ultimately adopted by the ALJ as the RFC, the vocational expert testified regarding whether such an individual could perform plaintiff's past work with the following: "Depending on the situation the Production Worker could be performed depending on the interaction.  Because they are all different.  Her job mainly required more interaction with co-workers than others.  So, it is questionable."  (Tr. 44). The ALJ asked no further questions regarding this testimony or about the plaintiff's ability

Report and Recommendation
Cross-Motions for Summary Judgment
*Thomas v. Comm'r*; Case No. 11-15450

to perform past work.  However, relying on this testimony, the ALJ stated in his

decision:  "The vocational expert testified that some of the positions that meet the

criteria of the claimant's abovementioned past relevant work could be

accomplished with the claimant's current residual functional capacity."  (Tr. 20).

Plaintiff maintains that no reading of the vocational expert's testimony regarding

past work could serve as substantial evidence in support of the step four denial,

finding that the plaintiff could perform past work.  And, although the ALJ made an

alternative step five finding that plaintiff could perform other work, the burden

shifts to the ALJ at the fifth step of the sequential evaluation process, and plaintiff

argues that she was harmed by the inability to have counsel present or, at a

minimum, question the vocational expert herself regarding additional limitations

caused by her severe impairments.

C.      The Commissioner's Motion for Summary Judgment

The Commissioner points out that the ALJ limited plaintiff to simple,

repetitive, routine work that required only superficial contact with others.  (Tr. 15).

Considering this functional capacity and plaintiff's vocational profile, an impartial

vocational expert testified that plaintiff could perform her past relevant work or a

significant number of other jobs.  The ALJ therefore found that Plaintiff was not

disabled and not entitled to DIB or SSI.  Thus, the Commissioner contends that the

ALJ's finding is supported by substantial evidence including the minimal and very

conservative treatment history, the mental status findings, the lack of support for plaintiff's alleged intellectual difficulties, and the physician opinions of record.

According to the Commissioner, ALJ properly determined plaintiff's RFC in light of all the evidence of record, including the medical opinions. The determination of an individual's RFC need not be based on a medical opinion because it is a determination reserved to the ALJ as fact-finder for the Commissioner. 20 C.F.R. § 404.1527(e)(2). It was proper for the ALJ to assess all the medical and other evidence and determine plaintiff's residual functional capacity. In any event, the Commissioner points out that the ALJ's RFC finding is supported by the findings and opinions of the consultative psychologist and the opinions of the reviewing state agency psychologist, and there are no contrary medical opinions in the record.

The Commissioner also contends that plaintiff incorrectly argues that the ALJ failed to account for all the limitations set forth in the report of consultative psychologist Menendes. According to the Commissioner, the ALJ's RFC finding very closely tracks the opinions expressed by Dr. Menendes in her report. Dr. Menendes opined that plaintiff could understand and follow simple and one-step instructions and perform and recall simple, routine, repetitive tasks. (Tr. 249). Consistent with that opinion, the ALJ found that plaintiff could perform simple, repetitive, routine tasks. (Tr. 15). Although Dr. Menendes also noted that plaintiff

"may" have difficulty with independent decision-making due to a "possible reading problem," she stated that her examination revealed no evidence of significant intellectual limitations. (Tr. 249). Thus, the Commissioner contends that the ALJ was not required to adopt Dr. Menendes' speculative opinion regarding a limitation for which there was no objective support. Finally, Dr. Menendes noted plaintiff's report that she did not handle conflict or frustration well, but such an observation, according to the Commissioner, does not arise to the level of "medical opinion." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."). The Commissioner asserts that the ALJ's RFC finding very closely mirrors the opinion of Dr. Menendes and is consistent with the opinion of the reviewing state agency psychologist. In addition, the Commissioner points out that there are no contrary medical opinions and the ALJ's finding is, therefore, supported by substantial evidence.

The Commissioner also argues that plaintiff incorrectly contends that the ALJ did not accommodate her moderate deficiencies in concentration, persistence, or pace. According to the Commissioner, plaintiff appears to misunderstand the two-fold purpose of rating deficits in concentration, persistence, or pace. The ratings are used to (1) screen out non-severe mental impairments at step two of SSA's sequential evaluation process, and (2) identify listing-level mental

impairments at step three.  The middle rating on the five-point scale (moderate) is

insufficient to establish a mental disorder of listing-level severity.  *See* 20 C.F.R.,

Part 404, Subpart P, Appendix 1, § 12.00.  According to the Commissioner, the

evidence supported the ALJ's finding that plaintiff's concentration did not

preclude her from performing the unskilled jobs identified.  The state agency

psychologist opined that plaintiff was not significantly limited in her ability to

understand, remember, and carry out simple instructions, and that she was only

moderately limited in carrying out detailed instructions or maintaining

concentration and attention for extended periods.  (Tr. 266-68).  He concluded

based on those assessments that she could perform unskilled work and perform

simple rote tasks on a sustained basis.  (Tr. 433).  Considering this and other

evidence, the Commissioner says the ALJ reasonably determined that plaintiff had

moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. 15).

Translating that rating into functional limitations, the ALJ concluded that plaintiff

could nonetheless perform simple, routine, repetitive work activity and the

vocational expert opined that those limitations allowed plaintiff to perform

thousands of unskilled jobs.  (Tr. 43-44).  The Commissioner points out that no

medical source opined, anywhere in the record evidence, that plaintiff had greater

mental limitations and substantial evidence supports the ALJ's findings.  *See*

*Berkowski v. Comm'r of Social Security*, 652 F.Supp.2d 846 (E.D. Mich. 2009)

(finding substantial evidence supported ALJ's finding that claimant with moderate concentration deficiencies could perform simple, unskilled work of 1-, 2-, and 3-step instructions).

Plaintiff's only other argument is that the ALJ failed to obtain a proper waiver of the right to representation from her and failed to fully develop the record. Despite plaintiff's claims that the ALJ "forced" her to waive her right to representation, however, it is clear from the record that the ALJ continued Plaintiff's first hearing to allow her to secure representation but that she arrived at the re-scheduled hearing alone. (Tr. 31). According to the Commissioner, there is nothing in the agency regulations or the case law of this circuit to suggest that an ALJ is required to give multiple continuances to allow a claimant to obtain counsel. The Commissioner also points out that plaintiff raised no objection at the hearing to going forward unrepresented. And, according to the Commissioner, plaintiff has failed to demonstrate that the ALJ failed to fully develop the record. Plaintiff cites her "limited intelligence" and claims that she was "easily confused" during the hearing but, according to the Commissioner, substantial evidence in the record supports the ALJ's finding that there was no support for plaintiff's alleged intellectual difficulties, particularly considering the fact that she quit school after 10th grade due to a pregnancy and not any academic problems. (Tr. 18). Plaintiff also faults the ALJ for not asking more questions about plaintiff's alleged bipolar

disorder, but according to the Commissioner, none of plaintiff's regular mental health specialists diagnosed her as bipolar or noted any symptoms associated with such a disorder. (Tr. 205-27, 246-50, 293-315). Finally, plaintiff argues that the ALJ did not allow her to cross-examine the vocational expert at the hearing but she fails to explain how she was harmed. Although plaintiff asserts that the vocational expert's testimony regarding her ability to perform her past relevant work was equivocal, she does not similarly challenge the testimony of the vocational expert that she could perform at least 23,000 other jobs in Michigan. The Commissioner contends that because substantial evidence supports the ALJ's RFC finding, his hypothetical question to the vocational expert accurately described plaintiff's functional capacity and it was therefore reasonable and appropriate for the ALJ to rely on the vocational expert's uncontradicted testimony. According to the Commissioner, plaintiff received a full and fair hearing and the ALJ adequately developed the record in this case.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.

Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe

impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without further
analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

1.     Mental impairments

In the view of the undersigned, the ALJ reasonably adopted the vast majority of Dr. Menendes' opinions regarding her mental limitations and fully explained citing evidence from the record why he did not adopt all the restrictions she imposed. While Dr. Menendes noted that plaintiff does not handle frustrating situations well, should not be expected to be able to cope with stress or difficult situations in the work setting, that plaintiff's social skills appear to be poor and that she would not be able to deal well with conflict, the ALJ gave this opinion only

partial weight as it was only partially consistent with the evidence as a whole.  The ALJ found that although the evidence supports the majority of Dr. Menendes' opinion, the record does not support a finding that plaintiff is not able to handle stressful or difficult situations in a work setting.  Specifically, the ALJ pointed to notes showing that plaintiff has handled very difficult situations in her family life, and was considered a good mother and care giver.  Moreover, it is evident from the RFC that the ALJ accommodated all the plaintiff's mental impairments that he found credible and supported by the record given his conclusions that she would need to be restricted to jobs involving only superficial interpersonal contact with coworkers and the public, and she is further limited to simple, routine, and repetitive tasks.  The ALJ was not required to adopt Dr. Menendes' opinions without regard to considering all the evidence in the record, medical or otherwise.

Plaintiff also argues that the ALJ failed to account for her moderate limitations in concentration, persistence or pace because Dr. Menendes opined that plaintiff "is able to understand, retain, and follow simple and one step instructions. She is able to perform and remember simple, routine, and repetitive tangible tasks ... she may have difficulty with performing complex or multi-step tasks, making independent work related decisions, or engaging in abstract thinking and work that is not routine."  (Tr. 249).  Plaintiff does not explain how the ALJ's limitation of plaintiff to "simple, routine, repetitive tasks" is inconsistent with Dr. Menendes'

opinion that plaintiff is "able to perform and remember simple, routine, and repetitive tangible tasks." The undersigned concludes that the ALJ's decision regarding the extent of plaintiff's mental limitations is supported by substantial evidence in the record.

### 2. Representation/Development of the Record

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). While the claimant carries the burden of establishing disability, *see* 20 C.F.R. § 404.1512(a), the ALJ has a heightened duty to develop the administrative record "when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures...." *Trandafir v. Commissioner of Social Sec.*, 58 Fed.Appx. 113, 115 (6th Cir. 2003), citing *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847, 856 (6th Cir.1986); *Lashley v. Secretary of H.H.S*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). The ALJ must elicit all relevant facts on both sides of the issue in order to fully develop the record. *Lashley*, 708 F.2d at 1051-52 (6th Cir. 1983). This Court must analyze the record to determine whether the ALJ failed to fully develop the record and therefore denied plaintiff a full and fair hearing. *See Duncan*, 801 F.2d at 856.

The Sixth Circuit in *Lashley* determined the ALJ erred in his duty to develop

the record in the case of a 79 year-old *pro se* claimant who had a fifth grade education, had suffered two strokes, and had trouble reading, writing, and reasoning. *Id*. at 1049. The ALJ conducted a superficial examination that lasted only 25 minutes and failed to pay attention to the claimant's obvious confusion and inability to effectively present his case at the hearing. *Id*. at 1052.

The undersigned finds this case more like *Chambers v. Comm'r*, 2012 WL 3848675, *7 (S.D. Ohio 2012), and less like *Lashley*. In *Chambers*, there was no evidence in that the plaintiff's education or impairments prevented her from understanding the administrative proceedings, answering the ALJ's questions in a cogent manner, or presenting her case. Similar to this case, in *Chambers*, the ALJ continued the first administrative hearing to allow plaintiff an opportunity to obtain counsel, provided plaintiff with information about obtaining counsel, and advised plaintiff that if she appeared at the second hearing without counsel the hearing would proceed absent a good excuse. When plaintiff had not secured counsel by the second hearing, the ALJ proceeded with the hearing. *Id*. While plaintiff now claims that she was "confused" as evidenced by her comment about her representative wanting to ask for a jury, she elected to proceed with the hearing and has not offered any convincing evidence that she was not able to fully participate in the hearing. A review of the transcript does not reveal that plaintiff was somehow strong-armed by the ALJ to proceed. As to plaintiff's complaints

that she was not permitted to cross-examine the vocational expert, plaintiff has not

offered any evidence suggesting that she was prejudiced based on this purported

error.

    In addition, plaintiff did not attempt to show any good cause for a second

continuance.  Social Security Regulations provide, "The administrative law judge

will change the time or place of the hearing if [a Plaintiff] ha[s] good cause[.]" 20

C.F.R. § 416.1436(d).  *Henderson v. Astrue*, 2012 WL 2190834 (S.D. Ohio 2012).

"Good cause" for a change in the hearing time or place exists in two situations that

do not apply in the present case.[2]  A claimant may also seek to establish show

"good cause" in other circumstances:

> (f) Good cause in other circumstances. In determining
> whether good cause exists in circumstances other than
> those set out in paragraph (e) of this section, the
> administrative law judge will consider your reason for
> requesting the change, the facts supporting it, and the
> impact of the proposed change on the efficient
> administration of the hearing process. Factors affecting
> the impact of the change include, but are not limited to,
> the effect on the processing of other scheduled hearings,
> delays which might occur in rescheduling your hearing,
> and whether any prior changes were granted to you.
> Examples of such other circumstances, which you might
> give for requesting a change in the time or place of the
> hearing, include, but are not limited to, the following:

---

[2]  The regulations explain to claimants that good cause exists when: "1) You or your
representative are unable to attend or to travel to the scheduled hearing because of a serious
physical or mental condition, incapacitating injury, or death in the family; or (2) Severe weather
conditions make it impossible to travel to the hearing." 20 C.F.R. § 416.1436(e).

(1) You have attempted to obtain a representative but need additional time;
(2) Your representative was appointed within 30 days of the scheduled hearing and needs additional time to prepare for the hearing;
(3) Your representative has a prior commitment to be in court or at another administrative hearing on the date scheduled for the hearing;
(4) A witness who will testify to facts material to your case would be unavailable to attend the scheduled hearing and the evidence cannot be otherwise obtained;
(5) Transportation is not readily available for you to travel to the hearing;
(6) You live closer to another hearing site; or
(7) You are unrepresented, and you are unable to respond to the notice of hearing because of any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have.

20 C.F.R. § 416.1436(f).  In this case, plaintiff did not seek to establish good cause for any further adjournment of the hearing.

Under the foregoing circumstances, the undersigned finds no failure by the ALJ to develop the record nor any error or prejudice to plaintiff because she was not represented at the hearing.

3.      Vocational expert testimony

Plaintiff argues that the vocational expert's testimony is "equivocal" as to whether she could perform her past work with the RFC formulated by the ALJ. The undersigned concludes that even if plaintiff is correct, given the ALJ's alternative step 5 finding, that there were sufficient other jobs that plaintiff could

perform in the national economy with that RFC, any error is harmless.  And, as the Commissioner points out, plaintiff does not challenge the vocational expert's testimony in this regard or the ALJ's reliance on it.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 25, 2013            s/Michael Hluchaniuk
                                   Michael Hluchaniuk
                                   United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>February 25, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>John M. Brissette, Judith E. Levy, AUSA, and the Commissioner of Social Security</u>.

                                   s/Tammy Hallwood
                                   Case Manager
                                   (810) 341-7850
                                   tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Thomas v. Comm'r*; Case No. 11-15450